May it please the court, my name is Lawrence Gerzog, I represent Mr. Troy Totsu and this is a case arising out of a state habeas corpus position. I did not represent Mr. Totsu at any of the proceedings below. The kind of case this is, is a case about improper bolstering and trial counsel's ineffectiveness in allowing it to happen. This case involves a case involving a home invasion. Just to be clear about that, the ineffective assistance was the failure to object when the what you call bolstering was happening? To allow the bolstering to occur without a... So a failure to object? Yes sir. The crime at issue was a home invasion. There were, I believe, four people in the home when it was invaded, a mother, a father, and two children. The father never testified at any point in the proceeding because he said that he had not, was unable to get a good look at... So was there bolstering as contemplated under New York law? In other words, a hearsay statement by, for example, a police officer that a witness had identified a defendant. Did we have that here? Well, you do have some of that here, Judge Chin, but the problem is that the testimony, even if hearsay, was so thin and not reliable that the judge, the counsel, should have objected to its coming in at all. I guess I'm having difficulty seeing how this was a bolstering problem. I thought bolstering was when you elicited, usually from a police officer, the fact that the witness had identified the defendant on a prior occasion. So then it's hearsay and you're bolstering the witness, usually the witness's in court identification. But the officers here didn't testify to the identification, did they? They just testified to the procedures that were used in the lineup. Well, it's my understanding that what they testified to was that the witnesses in the lineup had made certain statements about the people they saw, that they could see their eyes through the slits of the masks, and that that was enough to assure the witness that it was such and such a witness, in this case, Mr. Toteskiel, and that they were sure about that when, in fact, it was virtually impossible. What's the statement that was objectionable here? At what point was it bolstering when counsel should have made the objection? Well, there were several, Your Honor. So what are those specific statements and how was it bolstering? Specifically, as I mentioned, it had to do with relating the comments of particularly the young children that were witnesses, as Your Honor is, of course, aware, the testimony of eyewitnesses, and especially children eyewitnesses, is very suspect. And for the police, who are people of authority and can add the weight of their authority to the statement, if an eight-year-old says, oh, yes, that was the person, that is something- I don't see in your brief a specific excerpt of a particular police officer quoting a prior identification. Was there such testimony? I can't, I would take too much time to look in the brief right now, if Your Honor would like me to. No, no, well, I mean, I'm asking you whether you recall a specific- In general, that there was significant bolstering of- I mean, there may have been bolstering in the general sense of explaining that they were under pressure, they were upset- Terrified, in fact, I think they testified. The procedures were fine. There's that kind of general bolstering, I suppose. But in terms of the specific bolstering that's contemplated by New York law, I'm not sure that it's there. Well, can you imagine, Judge, that you have these two children whose home has been invaded by people wearing masks with a gun, and they're being asked to identify witnesses, and they can barely contain their own fear and their own trepidation. It's a challenge to their credibility in terms of how they testified at trial. And I don't think that that's a bolstering problem. Except that the police were allowed to say, oh, well, when we did the lineups, they were sure. And that allows for the jury to say, oh, well, okay, maybe they didn't do so well here in court. But when it was time for the lineups and the potential suspects were hidden from them, of course they were in a position to not be as frightened as they might have been testifying in open court. And I think that that was the problem, that the police were allowed to bolster, as I've been saying, the testimony. There really was very little testimony, if you look at the entire record, against Mr. Totesie. Well, they caught him in the car with stolen property in the car, didn't they? Well, they did, but- That's pretty good evidence, isn't it? It is some evidence, but we all know that there are explanations for being in a car with stolen property. There's no argument that he stole the property or was anything but a passenger in the car. He had also worked, done some construction work in the home? I'm not sure that's the case. I think it was- It was the other guy? I think it was the witness, Lucas, that had done the construction work in the home. There were cell phone records that your client's last phone call before the time of the crime connected him to a cell tower that was close to the Shah's home? Am I remembering that correctly? Judge, I'm not here to say there was no evidence at all. But in terms of, you know, Mr. Lucas was acquitted. And he was supposed to be the gunman and ringleader. So, the jury had reason to believe that there was reasonable doubt as to his guilt. And because of the bolstering, Totusa was convicted. We'll hear from your adversary. Thank you. Thank you. Good morning and may it please the court. My name is Autumn Hughes and I represent the Respondent Appellee, William Lee. Your Honors, the District Court issued a certificate of appealability that was solely on the basis of an alleged failure to object to bolstering under New York law. And the District Court quotes People v. Spicula, which is the court case that describes what bolstering is under New York law. And bolstering is hearsay evidence of a witness that hearsay evidence to the effect that a witness identified a defendant as the perpetrator on some prior occasion. And quite simply, Your Honor, there is none of that in this case. I know my opponent mentioned at some point that the officers said that the officers testified that the lineup was clear and the witnesses identified the defendant, but that's not true. And I would point at, in the record, Respondent's Appendix 564, 565, 566, which is where Detective Bestone talks about the witnesses who did the lineup. Because Detective Bestone is the only detective in that room when the lineup is happening. He doesn't say Ms. Shaw identified the defendant. He says Ms. Shaw came in, she did the lineup, and she left. Rita Shaw came in, she did the lineup, and she left. And the testimony that they identified defendant comes from Ms. Shaw and Ms. Rita Shaw. Your Honors, if there are no further questions, I would rely on my brief. Did any of the police officers testify to prior descriptions of the defendant or of the perpetrator that were given to the police? Yes, Your Honor. There was some of that, but there's two things about that. First off, under New York law, that's not bolstering. And second off, that comes out in cross-examination, because the theory of the defense case was that these witnesses did not see defendant, despite the fact that Ms. Shaw saw him without a mask for a significant period of time, and Rita Shaw testified that the mask covered very little of his face. She saw all of his eyes. There's a moment in the, I believe it's the redirect examination, where Rita Shaw is saying, it goes up to here, and it doesn't say in the record where here is, but she says she can see part of defendant's nose. She can see all of his chin and face. And the fact of the matter is, there is a lot of testimony here about that lineup, because that lineup is very strong evidence because of how well conducted it was. These witnesses don't have any cross-examination. They don't have anyone telling them who to pick out. None of that is in here. But yet, they have no hesitation in picking out Mr. Totesow. I'm sorry, I've been saying it, Totesow. I suspect that might be wrong. Mr. Totesow, this whole time. But that's not bolstering. That's good, strong evidence. And honestly, Your Honor, at the end of the day, this is not a case that turns on identification. This is a case that turns on the circumstantial evidence. The cell phone record showing defendant's cell phone positively identified to him, leading to the Shaw house, and then leading away from the Shaw house, the phone that he's caught with a few hours later by the New York Police Department, who have no knowledge of this case. And yet, they find defendant with that cell phone in the car that was used in the robbery with $7,000, Mr. Shaw's BJ's club card, his identification. His first phone call when the police tell him we're going to impound the car is to lie to the police and say, let me call my brother to pick it up, and call the co-defendant. And the mask, the mask that's positively identified as his mask, is also in the car. This is a very strong circumstantial evidence case. And the benefit of this additional identification, it's just the final nail in the coffin, Your Honor. And even without that identification evidence, this would still have been a guilty. Thank you, Your Honors. The very point my colleague made that this is a highly circumstantial case makes it even clearer that the bolstering evidence was more damaging than it might have been in another case where there was more direct evidence. Circumstantial cases, we all know, are perfectly legal and can sustain convictions. But when you have people saying, that's the guy, I saw him in my house, as opposed to circumstantial evidence, that is much more likely to cause a conviction. And again, I would suggest, and one never knows why a jury convicts and why a jury acquits, but the ringleader here was acquitted with essentially the same evidence. If there are no other questions, I'd be ready to yield my time. Thank you. Thank you both, and we'll take the matter under advisement.